USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/2025

0

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GRAND ASSOCIATES, LLC,

     Plaintiff,

-against-

4D SIGHT, INC.,

     Defendant.

---

24-CV-03258 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

## INTRODUCTION

Plaintiff Grand Associates, LLC ("Plaintiff") brings this action against Defendant 4D Sight, Inc. ("Defendant") to recover damages in quantum meruit for Defendant's alleged use and occupancy of Plaintiff's property. Plaintiff also brings claims against Defendant for fraudulent misrepresentation and omission in connection with a lease agreement entered into between Plaintiff and Defendant's CEO, and for fraudulent inducement to enter into the lease.

Before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

### I. FACTS AND PROCEDURAL HISTORY[1]

Plaintiff is the fee owner and landlord of 66 Allen Street, a building on the Lower East Side of Manhattan comprised of seven residential units. Compl. ¶ 6. Defendant is a technology

---

[1] The factual recital is taken from the First Amended Complaint (Dkt. No. 56) ("Amended Complaint" or "Compl.") and is assumed true for purposes of this Opinion.

company headquartered in San Francisco, California. *Id.* ¶¶ 7–8. On September 19, 2022, Defendant's CEO, Erhan Ciris ("Mr. Ciris"), entered into a lease (the "Lease") with Plaintiff to rent the penthouse apartment of 66 Allen Street (the "Apartment") as his personal residence. *Id.* ¶ 1. The Lease term began on October 1, 2022 and ran for 30 months. *Id.* ¶ 10. The Lease prescribed a rent of $20,000 per month, with abatements provided if Mr. Ciris complied with the Lease obligations. *Id.* ¶¶ 10–11.

The Lease contained certain prohibitions against non-residential use of the Apartment. Specifically, the Lease prohibited use of the Apartment for any purpose other than "as a private residential apartment" and stated that "[n]o home office use is permitted, except in compliance with law." *Id.* ¶ 13. In addition, when negotiating the Lease, Plaintiff's manager "advised Ciris that the penthouse's use and purpose was solely as Ciris' residence and not for business or commercial purposes." *Id.* ¶ 14. Mr. Ciris agreed to these terms "both orally and as set forth in the printed lease." *Id.*

Mr. Ciris occupied the Apartment through June 2024. *Id.* ¶ 27. During that time, Mr. Ciris conducted work for Defendant in the Apartment. According to the Amended Complaint, Mr. Ciris himself stated that he "uses his apartment not only as a personal residence but also as a base for business activities, which require a secure and undisturbed environment to conduct business effectively." *Id.* ¶ 24. Further, Mr. Ciris "denied plaintiff's maintenance staff and vendors (i.e. repairmen) from accessing the penthouse on numerous occasions" because he was "fundraising for defendant" and "conduct[ing] other business on the defendant's behalf." *Id.* ¶ 21. Additionally, Mr. Ciris' former assistant "advised the plaintiff's building manager that she was employed by the defendant and/or Mr. Ciris to work in the penthouse on the defendant's behalf." *Id.* ¶ 22.

Mr. Ciris did not pay rent after May 31, 2023. *Id.* ¶ 2. To recover the unpaid rent, Plaintiff brought non-payment actions against Mr. Ciris in New York state court. *See id.* Plaintiff filed the instant action against Defendant 4D Sight on April 29, 2024. *See* Dkt. No. 1. On July 8, 2024, Plaintiff and Mr. Ciris settled the non-payment suits in state court. *See* Compl. ¶ 2. On October 2, 2024, Defendant moved to dismiss Plaintiff's complaint. *See* Dkt. No. 53. Plaintiff filed an Amended Complaint on October 16, 2024. *See* Dkt. No. 56.

In its Amended Complaint, Plaintiff brings three causes of action against Defendant. First, Plaintiff seeks damages in quantum meruit for Defendant's use and occupancy of the Apartment. *Id.* ¶ 27. In support of this claim, Plaintiff argues that Defendant was a "a de facto cotenant of the penthouse, occupying and using it as its corporate offices" and thus owes "the market value for defendant's use and occupancy of the penthouse." *Id.* ¶¶ 18, 27. Second, Plaintiff brings claims against Defendant for fraudulent misrepresentations and omissions (Count 2) and fraudulent inducement (Count 3). In support of its fraudulent misrepresentations and omissions claim, Plaintiff argues that Defendant "acte[d] through its CEO Ciris" to make "material misrepresentations and omissions when seeking to lease the premises as a residence, materially misrepresenting facts regarding the penthouse's intended use . . . as its New York corporate office." *Id.* ¶¶ 31–32. Finally, Plaintiff claims that "Ciris willfully omitted the material fact of the defendant's intent to use the penthouse as an office for a commercial enterprise when dealing with plaintiff to induce it to rent the penthouse" and "defendant intended to defraud the plaintiff into providing a residential lease to its CEO despite defendant's duty to disclose the true purpose of the lease, namely to have an office in Manhattan." *Id.* ¶ 35. These actions, according to Plaintiff, amount to fraudulent inducement. *Id.*

3

Defendant filed a Supplemental Motion to Dismiss the Amended Complaint on October 30, 2024. *See* Dkt. No. 58. The Supplemental Motion to Dismiss incorporated the arguments raised in Defendant's October 2, 2024 Motion to Dismiss. *See* Dkt. No. 58 at 2. The Court held oral argument on April 11, 2025, and this Opinion considers the arguments raised in both the Supplemental Motion to Dismiss and Defendant's original motion papers, as well as matters addressed on the record during oral argument. *See* Dkt. No. 62.

## DISCUSSION

### I. Plaintiff has Article III Standing

Defendant moves to dismiss the Amended Complaint as moot under Rule 12(b)(1) based on the settlement agreement between Plaintiff and Mr. Ciris. *See* Dkt. No. 54 at 10. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The Case or Controversy Clause of Article III, Section 2 of the United States Constitution limits the subject matter jurisdiction of the federal courts such that the 'parties must continue to have a personal stake in the outcome of the lawsuit.'" *United States v. Wiltshire*, 772 F.3d 976, 978 (2d Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)). When a plaintiff loses a personal stake in the outcome of a lawsuit, the Court loses its subject matter jurisdiction, and the case becomes moot. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016). Further, a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)).

Defendant's mootness argument fails because Plaintiff seeks damages beyond those provided through Plaintiff's settlement agreement with Mr. Ciris. The settlement agreement

4

resolved Plaintiff's lawsuits against Mr. Ciris. *See* Compl. ¶ 2. But Plaintiff claims that Defendant owes damages in addition to those Mr. Ciris owed or paid in connection with the settlement of claims against him personally. According to Plaintiff, Defendant "was a de facto cotenant of the penthouse, occupying and using it as its corporate offices" and thus owes damages for its use and occupancy of the Apartment in quantum meruit. *Id.* ¶¶ 18, 27. Because the Court could plausibly award such damages to Plaintiff, it is possible for the Court to "grant . . . effectual relief" to Plaintiff should it prevail. The case therefore is not moot and the Court declines to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    Defendant's 12(B)(6) Motion to Dismiss is Granted

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Critically, "[a] court's function on a Rule 12(b)(6) motion is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022) (quoting *Festa v. Loc. 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990)). "Consequently, a complaint will survive . . . if it alleges facts that, taken as true, establish plausible grounds to sustain a plaintiff's claim for relief." *Id.* When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may "look[ ] only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13-CV-06132 (JPO), 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014).

### A. Plaintiff's Quantum Meruit Allegation (Count 1) Fails to State a Claim

Quantum meruit is an equitable remedy that allows a party to "recover for services rendered or goods provided in the absence of a contract" and "prevent unjust enrichment." *GSGSB, Inc. v. N.Y. Yankees*, No. 91-CV-01803 (SWK), 1995 WL 507246, at *2 (S.D.N.Y. Aug. 28, 1995). "In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)).[2] To establish the third element, an expectation of compensation, a plaintiff must specifically allege that it "'expected compensation from the Defendants, not from a third party.'" *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 67 (S.DN.Y. 2021) (quoting *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 523 (S.D.N.Y. 2017)).

Plaintiff's quantum meruit claim must be dismissed because Plaintiff does not plausibly allege that it expected compensation from Defendant for its alleged use of the Apartment as a corporate office. In fact, Plaintiff's fraud allegations are premised on Plaintiff's *lack* of knowledge that Defendant would use the Apartment as its corporate office; Plaintiff states "[h]ad defendant been honest that the unit was to be used as its New York corporate office, plaintiff

---

[2] The parties appear to agree that New York law applies to Plaintiff's claims. *See, e.g.*, Dkt. No. 54 at 8 (applying New York law); Dkt. No. 64 at 6 (same). "[W]here the parties agree that New York law controls, this is sufficient to establish choice of law." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

would not have let the unit to Ciris." Compl. ¶ 32.  Because Plaintiff leased the Apartment to Mr. Ciris, without knowledge that he intended to perform his job as Defendant's CEO from the Apartment, it could not have expected compensation from Defendant for its alleged use of the Apartment at the time Plaintiff entered into the Lease.  By its own admission, Plaintiff would not have agreed to the Lease if it had known that Defendant would use the Apartment as its corporate office.

However, Plaintiff could still recover in quantum meruit for the duration of the Lease term if it can establish that it subsequently developed an expectation of compensation.  A party's initial expectation that it would not receive compensation for a service "does not preclude [it] [from] having a reasonable expectation of compensation for work performed after communications suggesting a contrary understanding." *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, No. 22-CV-09766 (LJL), 2024 WL 4493644, at *13 (S.D.N.Y. Oct. 15, 2024) (quoting *Learning Annex Holdings, LLC v. Rich Glob., LLC*, 860 F. Supp. 2d 237, 244 (S.D.N.Y. 2012)).  Plaintiff's Amended Complaint points to at least two instances in which Plaintiff could have developed an expectation of compensation from Defendant for its alleged use of the Apartment:  Defendant "had mail and packages delivered" to the Apartment and Mr. Ciris' former assistant "advised the plaintiff's building manager that she was employed by the defendant and/or Mr. Ciris to work in the penthouse on the defendant's behalf." Compl. ¶¶ 20, 22.

Plaintiff nonetheless fails to show that these events triggered any expectation of compensation from Defendant.  Plaintiff ultimately brought "non-payment actions in the Civil and Supreme Courts, New York County" against Mr. Ciris, but "[D]efendant was not named in either of these suits and is not a party to the settlement." *Id.* ¶ 2.  Plaintiff's failure to add

7

Defendant as a party to the non-payment actions demonstrates that it expected compensation from Mr. Ciris, but not from Defendant; had Plaintiff expected compensation from Defendant, Plaintiff would have added Defendant as a party to the non-payment actions. Nor is there any evidence that, prior to this lawsuit being filed, Plaintiff in any way communicated to Defendant, or to anyone, that Plaintiff expected Defendant to pay any portion of the rent due on the Apartment. Plaintiff thus cannot establish the elements required to recover in quantum meruit because it cannot show that it "expected compensation from the Defendants, not from a third party." *Zim Am. Integrated Shipping Servs. Co,* 550 F. Supp. 3d at 67 (internal citations omitted).

Plaintiff does not claim otherwise. Rather, Plaintiff argues that, under New York law, a landlord is not required to show an expectation of compensation in order to recover in quantum meruit for the use of a leased premises. *See* Dkt. No. 64 at 6–7; Dkt. No. 69 at 2. In support of this argument, Plaintiff cites to *Carlyle, LLC v. Beekman*, a First Department case in which the Court found that a landlord properly sought recovery in quantum meruit for a sub-tenant's use and occupancy of a property. 133 A.D.3d 510, 511 (2015). Plaintiff's argument is unavailing because nothing in the *Carlyle* decision suggests that a landlord can recover in quantum meruit without an expectation of compensation. In *Carlyle*, a landlord of a garage sought recovery in quantum meruit from a sub-tenant that had been "in possession of the subject garage premises with the Landlord's knowledge and ha[d] been paying rent to the Landlord for approximately three years." *Carlyle, LLC v. Beekman Garage LLC*, No. 652780/13, 2014 WL 2967932, at *1 (N.Y. Sup. Ct. June 30, 2014) (internal citations omitted), *aff'd sub nom as modified*, *Carlyle, LLC*, 133 A.D.3d 510. The court held that the landlord properly sought recovery in quantum

8

meruit from the sub-tenant even though it was not a party to the garage lease. *See Carlyle, LLC*, 133 A.D.3d at 511.

Although the *Carlyle* court did not expressly analyze whether the landlord expected compensation from the sub-tenant, the landlord's expectation of compensation is clear from the facts of the case—namely that the landlord knew of the sub-tenant's occupancy of the garage and that the sub-tenant previously paid rent to the landlord for a period of approximately three years. The First Department's holding in *Carlye* does not absolve Plaintiff of its requirement to plead facts sufficient to establish that it expected compensation from Defendant. Because Plaintiff cannot establish the elements required to recover in quantum meruit, Plaintiff's first cause of action is dismissed under Rule 12(b)(6).

### B. Plaintiff's Fraud Allegations (Counts 2 and 3) Fail to State a Claim[3]

Allegations of fraud are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To do so, a plaintiff must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 532 (S.D.N.Y. 2024) (quoting *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021)). Furthermore, a plaintiff must "link[ ] the alleged fraudulent statements" to Defendant. *Worldwide Fun Ltd. v. Sanuk Enters., Inc.*, No. 17-CV-03418 (VEC), 2017 WL 11616418, at *3 (S.D.N.Y. Oct. 30, 2017) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

---

[3] Both of Plaintiff's fraud claims are based on Defendant's alleged misrepresentation concerning its intended use of the Apartment when negotiating the Lease, through its agent Mr. Ciris. *See* Compl. ¶¶ 31, 35. Accordingly, the Court analyzes these claims together.

Plaintiff's fraud claims do not meet the heightened pleading standard under Rule 9(b) because Plaintiff does not specify any allegedly fraudulent statements attributable to Defendant. In fact, Plaintiff's Amended Complaint is devoid of *any* statements made by Defendant. However, Plaintiff seeks to attribute certain of Mr. Ciris' statements to Defendant, claiming that Defendant acted through Mr. Ciris in seeking to lease the Apartment as its corporate office. Compl. ¶ 31. To that end, Plaintiff claims that Mr. Ciris, acting on behalf of Defendant, "materially misrepresent[ed] facts regarding the penthouse's intended use" and "willfully omitted the material fact of the defendant's intent to use the penthouse as an office for a commercial enterprise." *Id.* ¶¶ 31, 35.

To meet the pleading requirements for fraud, Plaintiff must establish that Mr. Ciris' statements can be attributed to Defendant. Under New York Law, "an employer is liable for the representations of its agents when those representations are made within the scope of the agent's employment." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 453 (S.D.N.Y. 2007). "[A]n employee acts within the scope of his employment when (1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Spina v. Lu Feng Liu*, 541 F. Supp. 3d 426, 431 (S.D.N.Y. 2021) (quoting *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016)). In contrast, "where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment." *Wahhab v. City of N.Y.*, 386 F. Supp. 2d 277, 290 (S.D.N.Y. 2005) (quoting *Stavitz v. City of N.Y.*, 98 A.D.2d 529, 531 (1st Dep't 1984)).

Plaintiff's fraud allegations must be dismissed because Plaintiff cannot show that Mr. Ciris' statements are attributable to Defendant. Plaintiff's Complaint does not contain facts

10

sufficient to demonstrate that Mr. Ciris negotiated the Lease with Plaintiff "in furtherance of the duties he ow[ed] to his employer." *Spina*, 541 F. Supp. 3d at 431. Rather, Plaintiff's allegations indicate that "the source" of Mr. Ciris' conduct was "personal in nature." *Wahhab*, 386 F. Supp. 2d at 290. The facts alleged in the Amended Complaint make clear that Mr. Ciris entered into the Lease to use the Apartment as his personal residence: The Amended Complaint explicitly states that Ciris leased the Apartment "as his personal residence" and includes a statement by Mr. Ciris that he "uses his apartment" as a "personal residence." Compl. ¶¶ 1, 24. Plaintiff's counsel acknowledged at oral argument that Mr. Ciris in fact used the Apartment as his personal residence during the entirety of his occupancy. Regardless of whether Mr. Ciris ultimately conducted business in the Apartment in addition to residing there, "the source" of his statements in entering into the Lease were "personal in nature" because the statements were made for the purpose of leasing his personal residence. *Wahhab*, 386 F. Supp. 2d at 290. Given these facts and the lack of any specific allegations regarding Defendant's role in securing the Lease or directing Mr. Ciris to lease the property, Mr. Ciris' statements cannot be attributed to Defendant. Furthermore, Plaintiff does not "specify" any other "statements that [it] contends were fraudulent." *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d at 532.[4] Because Plaintiff does not identify any allegedly fraudulent statements attributable to Defendant, Plaintiff fails to meet the heightened pleading standard for fraud under Rule 9(b) and its fraud claims must be dismissed.

---

[4] Plaintiff argues that its fraud allegations should not be dismissed because the special facts doctrine applies to its claims. *See* Dkt. No. 64 at 11. Even if the special facts doctrine applied to Plaintiff's claims, the claims would still be subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 290 (S.D.N.Y. 2023) (claims to which the special facts doctrine applies must still "pass muster under Rule 9(b)") (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005)). Because Plaintiff's claims do not meet the requirements of Rule 9(b), Plaintiff's claims must be dismissed, regardless of whether the special facts doctrine were to apply.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Amended Complaint (Dkt. No. 57) is GRANTED. The Clerk of Court is respectfully directed to terminate Dkt. No. 57 and CLOSE this case.

Dated: August 8, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge